**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL M. CONYETTE**, | ) | |
| Plaintiff, | ) | |
| v. | ) | **2:03cv290** |
| | ) | **Electronic Filing** |
| **WESTMORELAND COUNTY**, | ) | |
| Defendant. | ) | |

**OPINION**

CERCONE, D.J.

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 seeking redress for the alleged violation of his constitutional rights during the events leading to his termination from employment with defendant. Presently before the court is defendant's motion for summary judgment. For the reasons set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56 (c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts

showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. Plaintiff became employed by defendant Westmoreland County on May 13, 1988, as a unionized employee. On March 25, 1994, plaintiff was promoted to the position of Assistant Chief for Park Police for Westmoreland County. As assistant chief plaintiff held an executive position and did not enjoy the benefits of civil service. Plaintiff did not have an employment contract with Westmoreland County. Plaintiff held the position of Assistant Chief for Park Police until his employment was terminated on June 28, 2001.

In the spring of 2003 Officer Mark Ford, a park police officer, accidentally discharged his weapon in a county building. Ford had been at the shooting range just prior to the incident. Sargent Paola was the firearms instructor and responsible for assuring that all officers checked their weapons before leaving the firing range. On the day in question, Ford was sitting at a picnic table in the county building with several other officers while cleaning his firearm. During the process Ford pointed his handgun at the floor and pulled the trigger. The weapon discharged. Plaintiff was on duty at the time and requested statements from everyone who was present.

After the incident a meeting was held to determine what action should be taken. Present at the meeting were Chief Genard, Chuck Dominick, and two aids for county commissioners Tom Balya and Scott Conner. Inquiry was made as to what discipline should be taken with regard to Officer Ford. All individuals at the meeting with the exception of plaintiff recommended Officer Ford be terminated. Plaintiff recommended that Officer Ford be suspended and that the firearms instructor, Sergeant Paola, also be appropriately disciplined. Rob Ritson, aid to Commissioner Balya, said to plaintiff in effect: "well, your opinion doesn't count right now." Plaintiff did not pursue the matter further. A few weeks later Officer Ford was fired.

As Assistant Chief of Park Police plaintiff did not possess the authority to hire or terminate any individual's employment with the county. The assistant chief and the Chief of Park Police can recommend that an individual/employee be hired, terminated or promoted, but the ultimate decision rests with the County Commissioners. After the meeting concerning what discipline should be meted out to Officer Ford, plaintiff was not pressured, directed or requested to take any action with regard to Officer Ford. Officer Ford grieved his discharge and ultimately was re-instated as a result of union efforts undertaken on his behalf.

On May 23, 2001, Officer Altman accused plaintiff of placing sixteen gallons of gasoline from the County's gasoline pump into his own private vehicle. On June 6, 2001, plaintiff was suspended pending further investigation into the allegations. Directly thereafter, the Greensburg

Tribune-Review published an article identifying plaintiff as being suspended due to allegations that he had taken County gasoline for his own personal use. On June 15, 2003, plaintiff met with Park Police Chief Genard and Westmoreland County Director of Human Resources, Chuck Dominick, with regard to the allegations. Plaintiff completed a statement denying that he had taken any gasoline for personal use. Thereafter, a second meeting was held among the same individuals. Plaintiff was asked to take a lie detector test, which he declined to do. On July 3, 2001, plaintiff received a letter advising him that his employment had been terminated effective June 28, 2001. During the investigation additional articles appeared in the Tribune Review concerning the employment actions being taken against plaintiff.

Plaintiff has no actual information or knowledge about who from Westmoreland County provided information to the Tribune Review or any other media source regarding his employment status. Plaintiff believes, however, that the information may have been leaked by Officer Ford, because he has engaged in similar conduct in the past.

Plaintiff maintains that defendant's actions surrounding his termination violated his rights to free speech, substantiative due process, procedural due process, equal protection and privacy. Defendant contends plaintiff has failed to advance sufficient evidence to support any cause of action pled by plaintiff.

Section 1983 does not itself create substantive rights, but instead provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). In general a cause of action under 42 U.S.C. § 1983 has two elements: (1) a plaintiff must prove a violation of a right, privilege or immunity secured by the constitution and laws of the United States which was (2) committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997).

Plaintiff contends that his termination was in retaliation for exercising his First Amendment rights. He argues that his recommendation regarding Officer Ford constituted

protected speech and a genuine issue of material fact exists as to whether that protected speech was a determinative factor in the decision to terminate plaintiff's employment. Plaintiff further notes that defendant has never established that plaintiff actually engaged in improper conduct and posits that the assertion that he did constitutes a mere pretext for the real reason for his termination - his recommendation regarding Officer Ford.

A claim of retaliation for engaging in First Amendment activity is analyzed under a three-step process. Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997) (collecting cases). First, the activity in question must be constitutionally protected. Second, the plaintiff must show that the protected activity was a substantial or motivating factor in retaliatory employment action. Finally, a defendant may defeat a First Amendment retaliation claim by demonstrating "that the same action would have been taken even in the absence of the protected conduct." Id. (quoting Swineford v. Snyder County PA., 15 F.3d 1258, 1270 (3d Cir. 1994)).

To qualify as protected activity, plaintiff must demonstrate that he engaged in "speech ... on a matter of public concern." Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995). "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Green, 105 F.3d at 885-86 (quoting Connick v. Myers, 461 U.S. 138 (1983). The determination turns on the content, form, and context of the employee's speech. Id. The forum where the speech takes place likewise may shed light on whether it rises to the level of a matter of public concern. Id. at 886 n. 4.

Speech generally is recognized as a matter of public concern if it relates to any matter of political, social or other concern to the community. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). For example, speech that tends to "bring to light actual or potential wrong doing or breach of public trust on the part of government officials" by a public employee raises a matter of public concern. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). In contrast, "if the speech in question is purely personal, it does not fall under the protective umbrella of the First

Amendment ....” Brennan, 350 F.3d at 412; Swineford, 15 F.3d at 1271. In other words, matters that merely involve personal grievances or complaints about routine employment matters generally do not raise a matter of public concern. Brennan, 350 F.3d at 412. For example, complaints that a public employer retaliated against an employee for protesting negative work performance evaluations is beyond the scope of First Amendment protection. Zagarek v. Southern Tioga School District, 214 F.Supp.2d 468, 473 (M.D. Pa. 2002).

In determining whether an employee’s speech involves a matter of public concern, as opposed to a purely personal grievance, the motive of the speaker is not dispositive. Azzaro v. County of Allegheny, 110 F.3d 968, 978 (3d Cir. 1997). In other words, the fact that the speech was motivated by or addressed a private concern does not mean that the statement cannot qualify as protected speech. Brennan, 350 F.3d at 412-13. Instead, “the value of the speech itself” must be the central focus in determining whether the speech addresses a matter that concerns the public as well as the speaker. Id. The content, form and context, as well as the motive of the speaker, must all be taken into account in determining whether the speech touches on a matter of public concern.

Plaintiff has failed to identify speech that addresses a matter of public concern. Plaintiff’s decision to recommend a suspension rather than termination for Officer Ford involved the appropriate level of discipline for a single incident of negligence by Officer Ford. His conduct did not occur in the context of interaction with the public and the decision of appropriate discipline for a single officer under the specific circumstances did not involve a county-wide policy decision or general operating procedures for the County Park police. While plaintiff may well have been involved in operating the department, was familiar with the qualifications, skills and abilities of Officer Ford, and had an opinion on whether termination was warranted under the circumstances, these facts simply fail to convert plaintiff’s recommendation to a “matter of public, social or other concern to the community.” Brennan, 350 F.3d at 412.

Defendant also challenges the sufficiency of plaintiff's evidence on the element of causation. A review of the record verifies that plaintiff has failed to proffer sufficient evidence to support a finding that his statement concerning the appropriate discipline for Officer Ford was a substantial or motivating factor in the decision to terminate plaintiff's employment.

"The causation required to establish a claim under § 1983 is identical to that required under Title VII." Brennan, 350 F.3d at 420. "The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." Kachmar v. SunGuard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997).

It is well-settled that where there is temporal proximity between the protected activity and the adverse employment action, the requisite causal link may be inferred by the finder of fact. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). This is appropriate where the temporal relationship is in itself sufficiently suggestive. Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997). Where the temporal relationship is attenuated, a "time plus" other evidence is required. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). This "other" evidence may, but need not, take the form of an intervening pattern of antagonism or other evidence of retaliatory animus. Id. at 281. Proffering sufficient proof is not limited, however, to timing and demonstrative proof alone; instead, this element may be satisfied by "other evidence gleaned from the record as a whole from which causation can be inferred." Id

Plaintiff points to the temporal proximity between the meeting wherein he voiced his opinion about the appropriate responsibility and discipline concerning the discharge of Officer Ford's handgun and the subsequent events leading to his termination. Beyond the mere sequence of events, which were separated by several weeks, plaintiff testified as follows:

> Q: So, in this meeting you were asked, along with the Chief, to make a a recommendation about what discipline should be taken against Office Ford?
>
> A: Yes. I believe they all said terminate, except for myself. I just said,

> you can't fire him. That's when Commissioner Balya's aide told me that my opinion doesn't count at this time.
>
> At that same meeting, I saw Sgt. Paola, who is the fire arms instructor, talking to Officer Altman, who is the eye witness to me stealing the gas, I believe. And then she went back to Chuck Dominick's office, because I went back to Chuck Dominick's office to pick-up an application for a friend of mine who wanted hired at the county, and she was sitting, waiting for Chuck Dominick after that meeting.
>
> Q: Okay, so, do you think that it was some sort of set-up at that point?
>
> A: Yes.

Deposition Testimony of Plaintiff, Exhibit 1 of Defendant's Appendix (Doc. No. 17) at 30-31.

Plaintiff's evidence of causation is purely speculative. First, plaintiff's suggestion that the sequence of events is sufficiently suggestive is unavailing. On the record presented this argument amounts to nothing more than a "post hoc, ergo propter hoc" inference that is in itself insufficient. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997) (although timing alone can be sufficient in a particular context, "the mere fact that adverse employment action occurs after [protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."). Plaintiff's termination did not immediately follow his recommendation to suspend Officer Ford. The recommendation and the subsequent events involving the allegations of theft did not involve a single ongoing matter concerning office policy, the interaction between an employee and his or her supervisor, a debate about the appropriate procedure to be followed or a similar context-related undertaking. To the contrary, the two events appear to be virtually unrelated and as a result plaintiff cannot merely "demonstrate causation simply by pointing to the timing of the allegedly retaliatory action." Robinson, 120 F.3d at 1302.

Moreover, plaintiff's contention that the allegations against him constitute a "set-up" is grounded in pure speculation. Plaintiff merely hypothesis that because the officer whom he believes to be the one leveling the accusation of theft against him was in the Director of Human Resources' office following the meeting, the jury may infer that Officer Altman and Sergeant

Paola concocted a scheme to accuse plaintiff of theft. There is nothing beyond mere conjecture to support this proposition, however, and as a result the record is devoid of any competent proof of a causal link between plaintiff's recommendation and defendant's decision to terminate plaintiff's employment.

Plaintiff's efforts to supply sufficient evidence to support his due process claims equally fall short of the mark. Plaintiff argues that defendant's decision to terminate his employment constitutes an arbitrary and capricious act that violated his substantive due process rights because other employees who were alleged to be guilty of similar misconduct were not terminated. Plaintiff also asserts that defendant infringed the liberty interest in his reputation and denied him appropriate process to protect that interest during the investigation leading to plaintiff's termination.

In order to proceed on a claim for violation of due process, "a plaintiff must show a stigma to his reputation plus some concomitant infringement of a protected right or interest." Graham v. City of Philadelphia, 402 F.3d 139, 142 n. 2 (3d Cir. 2005) (quoting Ersek v. Township of Springfield, 102 F.3d 79, 83 n. 5 (3d Cir. 1996)). Plaintiff was accused of stealing gasoline for his own private use, and thus he has identified an allegation that will support a state law claim for defamation. He was terminated from an at-will position of employment. The United States Court of Appeals for the Third Circuit has assumed on two occasions that an "at-will" employee can satisfy the "plus" requirement where he has been stigmatized in the course of a decision to terminate his employment. Id. ("We will likewise assume for the purpose of argument that plaintiff is able to meet the 'stigma plus' threshold showing for proceeding on a violation of a liberty interest in reputation under the due process clause.').

"The core of due process is the protection of arbitrary government action and [it] has procedural and substantive components." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir. 2000) (citing County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)). Substantive due process concerns the outer limits of government conduct regardless of

the procedure employed and applies to both legislative and executive government conduct. Id.

Any analysis under the substantive component of the Due Process Clause of the Fourteenth Amendment must be tempered by "the Supreme Court's commands in addressing the interplay of constitutional and state tort law." Id. at 400. One guidepost is that "the Fourteenth Amendment is not 'a font of tort law to be super imposed upon whatever system may already be administered by the States.'" Id. (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)). A second guiding principle is that "as a general matter, the Supreme Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." Id. Consequently, federal courts must exercise judicial self-restraint and pay scrupulous attention to the established precedent. Id.

Against this backdrop "[e]stablishing a substantive due process claim even when executive action has infringed an interest protected by the Due Process Clause is difficult." Id. The Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. (quoting County of Sacramento, 523 U.S. at 846)). Actionable conduct is "that which shocks the conscience." Id. Meeting this standard is a "threshold" requirement in challenging executive action.

Of course, the "shocks the conscience" standard varies from circumstance to circumstance. Id. at 401 (citing County of Sacramento, 523 U.S. at 850)). But the Supreme Court's precedent has made clear that defamatory acts by government executives are not in themselves constitutional violations of the Due Process Clause. Id. at 401-402. In Paul, the Court held that police distribution of a flyer identifying the plaintiff as an "active shoplifter" did not infringe a liberty or property interest that was protected by due process. In Siegert v. Gilley, 500 U.S. 226 (1991), the Court held that a publication which identified the plaintiff as inept, unethical and untrustworthy and impaired his future employment prospects as a clinical psychologist likewise failed to allege the deprivation of a interest that was protected by the Due Process Clause. The Third Circuit similarly has concluded that a defamation claim against a

prior former employer allegedly causing the inability to compete for contracts providing special transportation services fails to raise a interest deserving of procedural due process protection and, pre-force, cannot support a substantive due process claim. Boyanowski, 215 F.3d at 401-405.

Here, plaintiff has done nothing more than assert that defendant's employment decision was arbitrary. Of course, saying it does not make it so and it is plaintiff's obligation to come forward with affirmative proof from which the finder of fact can conclude that the decision was so lacking in foundational support that it shocks the conscience. Having failed to proffer any evidence to meet this burden, plaintiff cannot proceed on a substantive due process claim.

Moreover, plaintiff's undeveloped argument that his due process rights were violated because he was not afforded a name-clearing hearing equally is without adequate foundation. First and foremost, plaintiff never requested such a hearing from defendant at any time prior to the initiation of the instant lawsuit. And plaintiff does not seek this form of relief. Of course, the principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is "a hearing to clear his [or her] name." Graham, 402 F.3d at 144 (quoting Ersek, 102 F.3d at 84). Having failed to request such a proceeding at any time when this relief may have been meaningful, plaintiff cannot now rely on the failure to provide such a hearing as a basis for recovery of money damages.

Furthermore, the particular rights and interests at stake did not require defendant to afford plaintiff a name-clearing hearing on its own initiative. "The procedural protections required by the Due Process Clause are determined with reference to the particular rights and interests at stake in a case." Graham, 402 F.3d at 145 (quoting Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997)). The three factors that must be considered are (1) the private interest at stake, (2) the risk of an erroneous depravation of that interest through the procedures employed and the probative value of any additional procedures that could be used as substitute safeguards, and (3) the government's interests involved, including the fiscal and administrative burdens that any additional or substitute procedural requirements would entail. Id. (quoting Mathews v. Eldridge,

424 U.S. 319, 335 (1976)). On balance, these factors fail to warrant plaintiff's contention that he was entitled to additional procedural process.

Although plaintiff's interest in reputation does not rise to the level of a "liberty" or "property" interest protected by the due process clause, Boyanowski, 215 F.3d at 401, plaintiff does have an interest in removing any improper tarnish to his reputation caused by false allegations of theft and he has an interest in improving his prospects of securing future employment as a law enforcement officer. Graham, 402 F.3d at 146. These common law interests are "genuine and weighty" and provide a measurable interest under the first prong of the Matthews analysis.

In considering the second prong of Matthews, the process which plaintiff received during the course of defendant's investigation into the allegations against him must be taken into account, as well as the "probable value, if any, of additional or substitute procedural safeguards." Matthews, 424 U.S. at 335. Plaintiff does not specifically point to any evidence or expressly assert that his ability to refute the allegations against him was improperly suppressed or unfairly hindered by defendant. In deed, plaintiff admits that he was given an opportunity to provide a response to the allegations against him and was able to provide any evidence or other information pertinent to the investigation. Plaintiff did not request a name-clearing hearing during the course of the investigation nor did he publicly protest or complain about the process being employed by defendant. Consequently, it follows that plaintiff was provided with the ability to present evidence and to participate in the investigation arising from the allegations leveled against him.

In contrast, the "probable value" of mandating a name-clearing hearing whenever a municipal officer is charged with impropriety – where no name-clearing hearing or similar procedure has been requested – would add only minimal protection over the procedures already being employed at great administrative expense. The occurrence of a name-clearing hearing where one has not been requested would merely add additional steps to the investigative process and enhance media coverage of the matter. Such a requirement could well be detrimental to a

fair number of employees who specifically have not requested such a hearing, and the government would be burdened by having to invest additional time and resources in conducting what would often times be an ordinary and straightforward investigation.

Finally, defendant has a strong interest in preserving the ability of its officials to make personnel decisions and to disseminate the grounds for its actions. Graham, 402 F.3d at 147. The government also has an interest in conserving public resources. Id.

Balancing the interests and factors involved leads to the conclusion that a name-clearing hearing is not required as a matter of course whenever a municipality terminates one of its officers based on a charge of impropriety. Plaintiff no doubt has a genuine interest in his reputation and ability to earn a livelihood. But he was not denied an opportunity to participate in the investigation or provide any evidence that he had to offer. Plaintiff did not request a name-clearing hearing or any similar process during the course of the investigation. Under these circumstances the governmental interests in making personnel decisions in the public interest, communicating those decisions to the public, conserving public resources, and utilizing the post-depravation procedures available under state law outweigh the need for a name-clearing hearing as a matter of course under the specific circumstances presented. Consequently, plaintiff's due process claim based on the defendant's failure to provide a name-clearing hearing as a matter of course cannot proceed further.

Plaintiff also has failed to present sufficient evidence to support an equal protection violation. Plaintiff's allegations that he may proceed as a "class of one" on the ground that he has been intentionally treated differently from others similarly situated falls short of the mark.

An individual may pursue an equal protection claim as a "class of one" where competent evidence supports a finding that he or she has been intentionally treated differently from others similarly situated and there is no rationale basis for the difference in treatment. Village of Willow brook v. Olech, 528 U.S. 564 (2000). Such an approach is consistent with the purpose of the Equal Protection Clause, which "is to secure every person within the State's jurisdiction

against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Id. (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)).

Plaintiff has failed to present competent evidence to support a finding that a comparable group of similarly situated employees were treated differently. Plaintiff argues that all county employees are similarly situated. But this argument lacks merit. In employment cases a plaintiff "cannot selectively choose a comparator" amid a sea of employees who are otherwise treated equally with the plaintiff, but instead must point to evidence that is probative of unequal treatment motivated by discriminatory animus. Simpson v. Kay Jewelers, 142 F.3d 639, 645-47 (3d Cir. 1998). Plaintiff has failed to proffer evidence that other high level officers of defendant were treated differently under circumstances that were substantially similar to those leading to plaintiff's termination. Merely asserting that other employees were not terminated when an allegation of impropriety had been raised is nothing more than a vague generalization. Without concrete evidence to consider whether comparable classes can be drawn from a group of similarly situated employees who were treated differently, no meaningful Equal Protection Clause analysis can be undertaken. Furthermore, merely branding a single decision as arbitrary and irrational does not overcome this shortcoming in plaintiff's proffered proof.

Moreover, Olech applies only where a plaintiff alleges that he or she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. Defendant has proffered a legitimate basis for its decision, and plaintiff has come forward with no concrete evidence that establishes inconsistencies, incoherencies or other basis that would truly support a finding of pretext. See Kautz v. Met-Pro Corp., 412 F.3d 463, 471 (3d Cir. 2005) (in the context of employment decisions a plaintiff bears the burden of showing that a defendant's proffered reasons are "so implausible, inconsistent, incoherent or contradictory that it must be a pretext for something else") (collecting cases in support)). Because plaintiff has failed to proffer sufficient evidence from which a finding can be made that

the decision to terminate him was not rationally related to a legitimate government purpose in making personnel decisions concerning its work force, defendant is entitled to summary judgment on plaintiff's equal protection claim.

Finally, plaintiff's claim for violation of his right to privacy is misplaced. Plaintiff has come forward with no authority to support the proposition that an allegation of theft against a county officer raises a matter of privacy and involves confidential information. The court has failed to find any authority to support a claim for privacy in such a setting. And plaintiff has failed to identify how any particular information which is deserving of constitutional protection was disclosed in a manner constituting an improper infringement. Plaintiff was a county officer and thus a public employee. Allegations of impropriety and the investigation into those allegations cannot be branded as matters involving a fundamental right to privacy. Consequently, plaintiff's assertion that defendant invaded his right to privacy by disseminating information regarding his employment to the press must fail.

Because plaintiff has failed to proffer competent and sufficient evidence to support any of his First and Fourteenth Amendment claims, defendant's motion for summary judgment must be granted. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Leonard E. Sweeney, Esq.
The Law Firm
976 Perry Highway
Pittsburgh, PA 15237

Mary C. Barkman, Esq.
Campbell, Durrant & Beatty, P.C.
Suite 310, 555 Grant Street
Pittsburgh, PA 15219

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL M. CONYETTE**, | ) | |
| Plaintiff, | ) | |
| v. | ) | **2:03cv290** |
| | ) | **Electronic Filing** |
| **WESTMORELAND COUNTY**, | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 14th day of December, 2005, for the reasons set forth in the Opinion filed this day, IT IS ORDERED that defendant's motion for summary judgment (Doc. No. 15) be, and the same hereby is, granted. Accordingly, final judgment is granted in favor of defendant and against plaintiff on all claims in the case. The Clerk of Court shall mark this case closed.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Leonard E. Sweeney, Esq.
The Law Firm
976 Perry Highway
Pittsburgh, PA 15237

Mary C. Barkman, Esq.
Campbell, Durrant & Beatty, P.C.
Suite 310, 555 Grant Street
Pittsburgh, PA 15219